IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
MARYLAND



| | |
|---|---|
| PETER J. BULGARINO and | : |
| CINDY A. BULGARINO, | : |
|     as parents and next friends | : |
|     of N.B., a minor child | : |
| 2801 Carroll Wind Drive | : |
| Ellicott City, MD 21043 | : |
| | : |
| *Plaintiffs,* | : |
| | : |
| | : |
| v. | : |
| | : |
| THE HOWARD COUNTY BOARD OF | : |
|     EDUCATION, | : |
|     ELLEN FLYNN GILES, | : Case Number 10-cv-02608 MJG |
|     JANET SIDDIQUI, M.D., | : |
|     FRANK J. AQUINO, ESQ., | : |
|     LARRY COHEN, | : |
|     ALLEN DYER, ESQ., | : |
|     SUSAN H. FRENCH, | : |
|     PATRICIA S. GORDON, | : |
|     JENNIFER S. PEDUZZI, | : |
|     NANCY EISENHUTH | : |
|     ADD JOHN DOE SUBSTITUTE | : |
|         TEACHER | : |
|     Individually and in their capacity | : |
|         as Members of the | : |
|         Board of Education | : |
|         or Howard County Public | : |
|         Schools Administration | : |
|             or staff | : |
| 10910 Route 108 | : |
| Ellicott City, MD 21043 | : |
| | : |
| *Defendants.* | : |

## VERIFIED COMPLAINT

Plaintiffs, Peter J. Bulgarino and Cindy A. Bulgarino, as parents and next

friends of N.B., a minor child, pursuant to Fed. R. Civ. P. 3, hereby sue the

Defendant, the Board of Education of Howard County, Maryland, and the named members of school administration and staff, by the filing of this Verified Complaint.   This is an action for unlawful deprivation of the Plaintiff, N.B., rights, privileges and immunities secured by the Constitution of the United States, laws of the United States and laws of the State of Maryland.  In support of their Complaint, the Plaintiffs aver as follows:

INTRODUCTORY STATEMENT

The contemporary social problem of school bullying and the emotional toll it exacts upon its child victims is omni-present and a topic of both social and legal currency. *See*, Erica L Green, *Bullying, Suicide Attempt at Elementary School*, THE BALTIMORE SUN (April 27, 2010) at A1.   Unsurprisingly, an emergent body of both state and federal decisional law has evolved around the topic, which chronicles the efforts of parents and child victims to procure relief under any number of divergent legal theories. *See, e.g., Patterson v. Hudson Area Schools*, 551 F.3d 438 (6th Cir. 2009)(in which the Sixth Circuit held that a school district could be held liable for sexual orientation harassment under a theory of deliberate indifference pursuant to 20 U.S.C. § 1681);  *Gremo v. Karlin*, 363 F. Supp 2d 771 (E.D. Pa. 2005)(seeking relief for the adolescent victim of a violent assault in the City of Philadelphia's secondary school system, resulting in damage to his brain, under federal constitutional theories, the state-created danger theory, and various state law and statutory theories);  *Karlen v. Westport Bd. Of Educ.*, 683 F. Supp. 2d 293 (D. Conn. 2009)(claims asserted under various U.S. Constitutional theories on the basis of racial discrimination, under the Connecticut Bullying

2

Statute, and under the Individuals with Disabilities in Education Act, 20 U.S.C. § 1400 (2010)(hereinafter, "IDEA"); *L.W. ex rel. L.G. v. Toms River Regional School Bd. Of Educ.*, 199 N.J. 381, 915 A.2d 395 (2007)(where the victim procured relief under the New Jersey Law Against Discrimination (LAD), N.J.S.A. §§ 10:5-1 *et seq.* for student-on-student violence).

The novelty of legal theories, under which parents of these distressed children must seek judicial redress, and the creativity of lawyering required to actually procure relief, probably signifies the lack of societal and legal credence given to the severity of distress children like N   experience.  Accounts of suicide or attempted suicide are becoming far too common, however, as the victims of school bullying cry out for aid.  The federal circuits, moreover, are divided on the need to exhaust administrative remedies under IDEA, where the issue of the physical safety of the child presents.  HCPSS's insurer, in this case, maintains that in cases of physical assault, the student is required to exhaust administrative remedies and/or request intra-district transfer under 20 U.S.C. § 6301 *et seq.*, (the No Child Left Behind Act of 2001).  The provisions of NCLB, however, specifically apply to "underperforming" institutions, which HCPSS – by its own publicity – clearly is not.    In the instant case, the Plaintiffs allege entitlement to relief under several legal theories, for reimbursement for tuition after their unilateral removal of the child to private, parochial institutions, for his physical and emotional safety and health.

PARTIES

1.     The Plaintiff, N.B., is a minor child whose date of birth is December 21, 1995.  As a minor child, he brings this action through his parents Peter J. Bulgarino and Cindy A. Bulgarino, who are adult individuals, his parents and next friends and at all relevant times are and were citizens of the State of Maryland, residing in Howard County and Ellicott City.

2.     The Defendant, The Howard County Board of Education (hereinafter, "the Board"), is the county-wide, corporate administrative body and "person" charged with the ultimate responsibility to ensure that students, who are compelled by law to attend class, are ensured physical integrity and safety when they attend to procure a free, appropriate public education as provided by law.  The Board maintains its principal offices at 10910 Route 108 in Ellicott City, Maryland 21043.  At all relevant times, the Defendant, Howard County Board of Education, was a recipient of both federal and State of Maryland funds.  At all relevant times, the Defendant, Howard County Board of Education, had supervisory power, custody of, control and responsibility for the premises of Patapsco Middle School, where Plaintiff, N.B. was a student.

3.     The Defendant, Ellen Flynn Giles, is an adult individual and member of the Howard County Board of Education, with principal offices at 10910 Route 108 in Ellicott City, Maryland 21043.  Ms. Giles is sued in both her individual and official capacities, as a Member of the Board.

4.     The Defendant, Janet Siddiqui, M.D., is an adult individual and member of the Howard County Board of Education, with principal offices at

4

10910 Route 108 in Ellicott City, Maryland 21043. Dr. Siddiqui is sued in both her individual and official capacities, as a Member of the Board.

5.      The Defendant, Frank J. Aquino, Esq., is an adult individual and member of the Howard County Board of Education, with principal offices at 10910 Route 108 in Ellicott City, Maryland 21043. Mr. Aquino is sued in both his individual and official capacities, as a Member of the Board.

6.      The Defendant, Larry Cohen, is an adult individual and member of the Howard County Board of Education, with principal offices at 10910 Route 108 in Ellicott City, Maryland 21043. Mr. Cohen is sued in both his individual and official capacities, as a Member of the Board.

7.      The Defendant, Allen Dyer, Esq., is an adult individual and member of the Howard County Board of Education, with principal offices at 10910 Route 108 in Ellicott City, Maryland 21043. Mr. Dyer is sued in both his individual and official capacities, as a Member of the Board.

8.      The Defendant, Susan H. French, is an adult individual and member of the Howard County Board of Education, with principal offices at 10910 Route 108 in Ellicott City, Maryland 21043. Ms. French is sued in both her individual and official capacities, as a Member of the Board.

9.      The Defendant, Patricia S. Gordon, is an adult individual and member of the Howard County Board of Education, with principal offices at 10910 Route 108 in Ellicott City, Maryland 21043. Ms. Gordon is sued in both her individual and official capacities, as a Member of the Board.

10.     The Defendant, Jennifer S. Peduzzi, in an adult individual and Principal of the Howard County Public School System, with principal offices at 10910 Route 108 in Ellicott City, Maryland 21043.  Ms. Peduzzi is sued in both her individual and official capacities, as the visible official of the Board in Administration of the Patapsco Middle School, located at 8885 Old Frederick Road, Ellicott City, MD 21043.

11.     The Defendant, Nancy Eisenhuth is an Assistant Principal who first became aware of the student on student violence and who failed to properly report the abusive conduct and take proper action, according to school administration.   Ms. Eisenhuth is sued in both her individual and official capacities, as the front line staff member to first become aware of the situation at the Patapsco Middle School, located at 8885 Old Frederick Road, Ellicott City, MD 21043.

12.     John Doe Substitute Teacher is a temporary, substitute teaching staff member who was present at least on one occasion of the student-on-student violence mentioned in this Complaint, located at 8885 Old Frederick Road in Ellicott City, MD 21043. The name used in  this Complaint is a misnomer, to be replaced in an amended pleading to follow, with the actual name of the party Defendant.

<u>VENUE AND JURISDICTION</u>

13.     Inasmuch as all the complained-of acts herein occurred within the geographical boundaries of this District - the State of Maryland - jurisdiction and venue are properly vested in this Honorable Court.  This Court has jurisdiction

under federal question theory, with the claims arising out of 20 U.S.C. § 1400 (2010), 42 U.S.C. §§ 1983, 1985 and 1986, 28 U.S.C. §§ 1331, 1343 and supplemental or pendent jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 (2010).

<u>STATEMENT OF FACTS</u>

14.     For the September 2007 school term, N. B., was a sixth-grade student at Patapsco Middle School in the Howard County Public School System (hereinafter, HCPSS), whose academic performance was superior (with grades in the A-B range,) prior to experiencing the events complained of in the instant petition.

15.     On or about December 6, 2007, and followed by further incidents on December 12, 2007, and on other occasions, N. was attacked while at school and on school property by gangs of male, young-adolescent peers.   Because the adolescents involved are minors, their names are abbreviated here with initials, DC, AW, TW, JK, and DA.   These attacks were documented in the form of a police report, and form part of N.'s permanent school record.   They involved various episodes and sorts of violence against N.'s person, including being stabbed and struck with pencils and drum sticks, being pushed and "slammed" into lockers, and other such acts of intolerable cruelty.   They involved acts of imprisonment and restraint, attacks and assaults with instruments that became dangerous weapons in the hands of the individual student perpetrators. These were serious episodes of student-on-student violence.

16.    As a result of the attacks, Nick became extremely afraid to attend school, became "school-avoidant," and began to suffer obvious psychological symptoms.

17.    After conferences in December 2007 and January, 2008, and February 20, 2008, N's parents, the Plaintiffs Peter J. and Cindy A. Bulgarino, met with school authorities in the persons of Principal Jennifer Peduzzi, Mr. Greg Lertora, and Ms. Nancy Eisenhuth to complain about Patapsco Middle School's willful neglect of the problem of bullying on the premises. HCPSS touts the high level of academic excellence and achievement in its school system generally, and at Patapsco in particular, and – as such – the lack of attention to the bullying incidents, to which their son N had fallen victim, caused deep emotional distress for Mr. and Mrs. Bulgarino and their daughter Nicole.

17.    At the conference in February, 2008, which Mr. Bulgarino attended by way of a three-party, telephone conference, Mr. Bulgarino was able to take copious, contemporaneous notes, and recorded in writing that Ms. Peduzzi conceded that Administration and teaching staff had mishandled N's case, not treating the separate incidents with the gravity they deserved. At the meeting, Principal Peduzzi was unequivocal in her frank assessment that school authorities, in particular the substitute teacher on duty and Ms. Eisenhuth had mishandled the situation, both in not having given the report sufficient gravity and having taken no remedial action. Principal Peduzzi also criticized Ms. Eisenhuth's failure to address the conduct of the "bullying" students directly

with them, and to notify their respective parents of the conduct, commenting that this "is not how Patapsco works." [1] Ms. Peduzzi also commented that she told Ms. Eisenhuth, that her failure to inform the parents of the children of the bullying students, was "not acceptable." Further, Principal Peduzzi conceded that she had personally "dropped the ball." Principal Peduzzi concluded the meeting by promising to be more personally involved.

18.     Though that sort of candor was welcomed by the family, school authorities – conversely – seemed to suggest that, owing to N      maturity-beyond-his-years, he had somehow precipitated violence against himself. Administration's double-speak in this regard did nothing to ameliorate the situation:   the attempt to shift the blame to Nick was unconscionable and deliberately neglectful.

19.     N  eventually underwent psychotherapy with a private psychologist, Steven Gaeng, Ph.D., in March of 2008, who diagnosed Nick with symptoms of post-traumatic stress disorder.

20.     On or about June 2, 2008, Mr. and Mrs. Bulgarino, through Counsel, notified the Howard County Department of Education of their concerns in

---

[1]     The parents of the children who initiated the attacks against Mr. Bulgarino were largely unaware that the problem even existed at the time, until they were contacted by the Howard County Police Department, which started a subsequent investigation.  Contacted by the police, the children's parents were apparently quite upset that school authorities had not contacted them to apprise them of the situation.  In the February 20, 2008 conference with Principal Peduzzi and Vice Principal Ms. Eisenhuth, Ms. Peduzzi was highly critical of Ms. Eisenhuth's failure to contact the parents of the offending students to make them aware of the disciplinary problem and threat the children were presenting to Master Bulgarino.

writing, of their intention to unilaterally remove Nick from attendance at Patapsco, and of their intention to seek relief judicially, if required, to fund his education at an alternate facility, because of the school's failure to ensure his physical safety.

21.     On March 12, 2008, N.B.'s parents removed him from attendance at the Patapsco Middle School, to a private, diocesan Catholic parochial school. Immediately, N. began to flourish again and excel academically.  Despite his improved performance in his new educational setting, he nevertheless remained extremely afraid of contact with the individual students at his former school and the prospect of continued or renewed contact with them.

22.     In July, 2008, the matter was referred to the Howard County Department of Education's insurance carrier, the Maryland Association of Boards of Education, with offices in Annapolis, MD, in the person of Susan Yost, the principal claims examiner.

23.     Correspondence between Counsel and Ms. Yost ensued over the course of the next several months, during the period N was still undergoing psychological counseling. At the end of N treatment period, with immediate improvement in his emotional and psychological state noted once placed in another secondary school, Counsel forwarded financial records of Nick's treatment, as well as financial records for cost of tuition in his new school setting.

24.     On or about September 22, 2009, over a year after receiving the case materials, Ms. Yost finally denied the Plaintiffs' claim.

25.     This lawsuit follows.

## CLAIMS FOR RELIEF

### COUNT I – Claim for Deprivation of Constitutional Rights under 42 U.S.C. § 1983 and U.S. Const. Amend XIV

26.     The allegations of ¶¶ 1-25 are incorporated by reference herein, as though restated and set forth fully in this paragraph.

27.     N.B. is and was entitled to the equal protection of the law while a student in the HCPSS.

28.     The incidents of student on student violence described in ¶ 13-14 above occurred on numerous occasions, which incidents were generally accompanied by verbal threats or taunts.

29.     As a result of the incidents of violence and the verbal threats and taunts described, *supra*, N began to exhibit uncharacteristic behaviors at school, including fear, distraction, inattention, poor performance, and crying.

30.     The Defendants Peduzzi, Eisenhuth, John Doe, and others knew of some or all of the violent conduct described in ¶¶ 13-14, *supra*, and conceded later that they were deliberately neglectful in failing to accord the incident the proper gravity and urgency, and in failing to take proper action to prevent it. The Defendants, thus, condoned, acquiesced or permitted the abusive activity to occur, as they themselves conceded.

31.     The said Defendants pattern of customs, usages and practices, described herein, including permitting, condoning or acquiescing in the said

11

abusive and violent conduct to occur, deprived N.B. of his federal and state rights to a free and safe appropriate public education, under the color of state law in violation of 42 U.S.C. § 1983.

32.     The Defendants deprived N.B. of his due process and equal protection rights under the Fourteenth Amendment of the Constitution of the United States, by engaging in the following conduct, which is not limited to:

a.      Failing to protect N. from the known risks of assault, harassment, verbal and physical threat, when they clearly had a duty to protect him;

b.      Failng to stop harmful and abusive bullying, restraint, imprisonment and assaults on N. when they had specific information about the severity of the conduct;

c.      Creating a dangerous environment at school by failing to adequately supervise students during and between classes, when they were free to harass, assault, and terrorize N., despite express knowledge – at a certain point – that harassment and violence was occurring.

d.      Permitting, condoning or acquiescing in the conduct which eventually deprived N.B. of his liberty and/or property rights which are protected under the Fourteenth Amendment to the Constitution of the United States; and

e.      Condoning, permitting or acquiescing in the violent and <u>continued</u> abusive conduct of the said students, which discriminated against N.B., because of his emotional disability of post-traumatic disorder, which further deprived him of his due process and equal protection rights under the Fourteenth Amendment to the Constitution of the United States.

f.      Effectively excluding N.B. from Patapsco Middle School, the society of his friends, his extra-curricular activities and other activities because of his continuing fear of even appearing at school, with the likelihood that the abusive bullying would continue.

g.      Putting N.B. at significant risk of continued physical and psychological injury with knowledge of his vulnerability because of the sheer virulence of the attacks against him.

33.    Defendant Peduzzi and the Defendant Board failed to adequately train and supervise teacher staff in their charge - as they effectively conceded - in appropriate or necessary techniques to defuse bullying situations at the Patapsco Middle School.   They failed and refuse to establish procedures that would protect the rights of children like N.B. to prevent his exposure to verbal and physical harassment, threats, bulling, unwanted touching, violence and assaults. They also failed to provide services to educate N.B. on how to deal with these incidents at school and the proper procedures for invoking the protection of

13

administration, leaving him to fend for himself completely, and have his parents act on his behalf.  School personnel, however, clearly had the duty to educate N.B. on how to enlist their aid, as they stood *in loco parentis*.

34.     Defendants knew or should have known that their inaction would result in the deprivation of N.B.'s federally and state-protected rights.  They therefore, acted deliberately or in deliberate indifference of N.B.'s federally and state-protected rights.

35.     As a result of the Defendants deliberate or deliberately indifferent conduct, N.B. has suffered and will continue to suffer:

a.     The symptoms of post-traumatic stress disorder and anxiety;

b.     Fear, panic and anxiety;

c.     Humiliation, embarrassment and fear of embarrassment;

d.     Nightmares;

e.     Depression;

f.     Sudden mood changes;

g.     Difficulty with concentration and inattention;

h.     Fear of attending school, which was one of N's greatest joys as a child.

i.     Loss of society of his school friends and acquaintances.

j.     The cost of tuition at his new educational institution.

36.     As a result of the Defendants actions or failures to act, N.B. was forced to withdraw from Patapsco Middle School out of fear for his safety,

because of the emotional turmoil continued attendance there presented, and because of the stigma associated with being the "victim" of persistent attacks.

37.     Defendants are liable to Plaintiffs for the said action or inaction.

WHEREFORE, Plaintiffs, N.B., by and through his parents and next friends Peter and Cynthia Bulgarino, pray this Honorable Court for the following relief:

a.      An award of compensatory damages in the amount of one hundred thousand ($100,000.00) dollars, against all the said Defendants, both jointly and severally;

b.      An award of punitive damages in the amount of one hundred thousand ($100,000.00) dollars, against all the said Defendants, both jointly and severally;

c.      Injunctive relief, where appropriate and available; and

d.      Such other and further relief as this Court may find reasonable, in the interests of justice, and within the scope of its discretion.

COUNT II - <u>Claim for Deprivation of Constitutional Rights under 42 U.S.C. § 1985 and U.S. Const. Amend XIV</u>

38.     The allegations of ¶¶ 1-37 are incorporated by reference herein, as though restated and set forth fully in this paragraph.

39.     The Defendants, individually and in concert with one another, deprived the Plaintiff, N.B., of his due process and equal protection rights under the Fourteenth Amendment of the Constitution of the United States.

40.     The Defendants are liable under 42 U.S.C. § 1985 to the Plaintiffs and at Maryland common law for the injuries described herein.

WHEREFORE, Plaintiffs, N.B., by and through his parents and next friends Peter and Cynthia Bulgarino, pray this Honorable Court for the following relief:

a.      An award of compensatory damages in the amount of one hundred thousand ($100,000.00) dollars, against all the said Defendants, both jointly and severally;

b.      An award of punitive damages in the amount of one hundred thousand ($100,000.00) dollars, against all the said Defendants, both jointly and severally;

c.      Injunctive relief, where appropriate and available; and

d.      Such other and further relief as this Court may find reasonable, in the interests of justice, and within the scope of its discretion.

COUNT III - <u>Claim for Deprivation of Constitutional Rights under 42 U.S.C. § 1986 and U.S. Const. Amend XIV</u>

41.     The allegations of ¶¶ 1-40 are incorporated by reference herein, as though restated and set forth fully in this paragraph.

42.     The Defendants knew or should have known that acts were committed or were about to be committed in violation of N.B.'s constitutional rights, privileges and immunities.

43.     The Defendants were vested with the power, authority and control to prevent the commission of acts against N.B., which constituted violations of

his constitutional rights, privileges and immunities, but refused or deliberately neglected to do so, resulting in his physical and emotional injuries.

44.     The Defendants are liable to the Plaintiffs for the injuries and damage described, *supra*, under 42 U.S.C. § 1986.

WHEREFORE, Plaintiffs, N.B., by and through his parents and next friends Peter and Cynthia Bulgarino, pray this Honorable Court for the following relief:

a.     An award of compensatory damages in the amount of one hundred thousand ($100,000.00) dollars, against all the said Defendants, both jointly and severally;

b.     An award of punitive damages in the amount of one hundred thousand ($100,000.00) dollars, against all the said Defendants, both jointly and severally;

c.     Injunctive relief, where appropriate and available; and

d.     Such other and further relief as this Court may find reasonable, in the interests of justice, and within the scope of its discretion.

COUNT IV – COMMON LAW NEGLIGENCE

45.     The allegations of ¶¶ 1-44 are incorporated by reference herein, as though restated and set forth fully in this paragraph.

46.     The Defendants had a duty to protect N.B., while in attendance at school.

17

47.    The Defendants breached that duty of care by failing to protect him, failing to adequately supervise the students who visited the physical assaults upon him.

48.    As a result of the Defendants action or failure to act, N.B. suffered the damages and injuries as previously described herein, *supra*.

WHEREFORE, Plaintiffs, N.B., by and through his parents and next friends Peter and Cynthia Bulgarino, pray this Honorable Court for the following relief:

a.    An award of compensatory damages in the amount of one hundred thousand ($100,000.00) dollars, against all the said Defendants, both jointly and severally;

b.    An award of punitive damages in the amount of one hundred thousand ($100,000.00) dollars, against all the said Defendants, both jointly and severally;

c.    Such other and further relief as this Court may find reasonable, in the interests of justice, and within the scope of its discretion.

COUNT V – COMMON LAW GROSS NEGLIGENCE

49.    The allegations of ¶¶ 1-48 are incorporated by reference herein, as though restated and set forth fully in this paragraph.

50.    The Defendants had specific, defining knowledge of the bullying activity being visited upon N.B. by the student perpetrators, and did nothing

about it, because – as they later conceded – they did not accord the incident sufficient severity.

51.    As a consequence of having specific knowledge of the incident and their failure to act, the Defendants were not only negligent; rather, they were grossly negligent.

WHEREFORE, Plaintiffs, N.B., by and through his parents and next friends Peter and Cynthia Bulgarino, pray this Honorable Court for the following relief:

   a.    An award of compensatory damages in the amount of one hundred thousand ($100,000.00) dollars, against all the said Defendants, both jointly and severally;

   b.    An award of punitive damages in the amount of one hundred thousand ($100,000.00) dollars, against all the said Defendants, both jointly and severally;

   c.    Such other and further relief as this Court may find reasonable, in the interests of justice, and within the scope of its discretion.

Respectfully submitted,

_____

Philip J. Sweitzer
Federal Bar ID # 29239
Attorney at Law
5817 Bel Air Road
Baltimore, MD 21206

|            |                     |
|------------|---------------------|
| Telephone: | 443.510.6055        |
| Telefax:   | 443.276.6355        |
| Email:     | pjsweitzer@gmail.com |

## VERIFICATION

We, Peter J. and Cyndi A. Bulgarino, as parents and next friends of N.B., Plaintiffs named herein, make the statements in the foregoing Complaint based upon personal knowledge, and solemnly affirm under the criminal penalties of perjury that they are true and correct to the best of our information, knowledge and belief.

/s/_Peter J. Bulgarino         Dated:        September 2, 2010
Peter J. Bulgarino

/s/_Cynthia A. Bulgarino       Dated:        September 2, 2010
Cynthia A. Bulgarino

20