IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PETER J. BULGARINO and          *
CINDY A. BULGARINO, as parents
And next friends of N.B.,       *
a minor child
            Plaintiffs          *

        vs.                     *   CIVIL ACTION NO. MJG-10-2608

THE HOWARD COUNTY BOARD         *
OF EDUCATION, et al.
                                *
            Defendants
                                *

*       *       *       *       *       *       *       *       *

<u>MEMORANDUM AND ORDER RE: MOTION TO DISMISS</u>

The Court has before it the Motion to Dismiss Amended

Complaint [Document 11][1] filed by Defendants Howard County Board

of Education ("the Board"), the individual Board members,[2]

Jennifer S. Peduzzi ("Peduzzi"), and Nancy Eisenhuth

("Eisenhuth"), and the materials submitted relating thereto.

The Court finds a hearing unnecessary.

---

[1]     Defendants have incorporated by reference the Motion to
Dismiss [Document 6], which was submitted prior to Plaintiffs'
filing of the Amended Complaint.  Plaintiffs have not objected
to the incorporation by reference.

[2]     The individual Board members include Ellen Flynn Giles,
Janet Siddiqui, M.D., Frank J. Aquino, Esq., Larry Cohen, Allen
Dyer, Esq., Sandra H. French, and Patricia S. Gordon.

I.   BACKGROUND[3]

     During the September 2007 school term, N.B. was a sixth-grade student at Patapsco Middle School in the Howard County Public School System ("HCPSS").  At the relevant times, Peduzzi was the principal of Patapsco Middle School and Eisenhuth was the assistant principal.  At the time, the Howard County Board of Education (the "Board") maintained a Safe School Environment Policy for HCPSS, which was contained in the Student Handbook (the "Handbook").  The Board required all students and parents to execute an agreement to abide by the terms in the Handbook. N.B. and his parents executed such an agreement for the 2007 school term.

     On several occasions, a group of students[4] attacked and bullied N.B. while on school property and during school hours. On December 9, 2007, a student slammed N.B. into a locker. Eisenhuth made N.B. and the student shake hands but did not report the incident to the students' parents.  On December 12, 2007, students barricaded N.B. in a storage area and stabbed at him with pencils for most of the class period.  School authorities did not take formal action in response to this

---

[3]   The "facts" herein are as alleged by Plaintiff and are not necessarily agreed upon by Defendants.

[4]   All students engaged in attacks on N.B. were males.

2

incident nor did they notify the parents of the students who initiated the attacks.

N.B.'s parents, Plaintiffs Cynthia and Peter Bulgarino ("Mr. and Mrs. Bulgarino"), attended conferences in December 2007, January 2008, and February 2008, concerning the bullying of N.B.  At the February 2008 conference, Peduzzi represented that the Administration had botched N.B.'s case and that Eisenhuth had mishandled the situation by not giving the reports of bullying "sufficient gravity and having taken no remedial action."  In addition, Peduzzi criticized Eisenhuth's failure to notify the parents of the children initiating the attacks.

In March of 2008, N.B. underwent psychotherapy with a private psychologist and was diagnosed with symptoms of post-traumatic stress disorder.  On March 12, 2008, N.B.'s parents removed him from attendance at Patapsco and enrolled him at a private Catholic parochial school.  In June of 2008, Mr. and Mrs. Bulgarino notified the Howard County Department of Education of their intent to seek judicial relief, if required, to fund N.B.'s private education.  In July of 2008, the matter was referred to the Howard County Department of Education's insurance carrier.  On September 22, 2009, the insurance carrier denied Plaintiffs' claim.

Plaintiffs instituted the instant lawsuit against the Board, the individual members of the Board, Peduzzi, Eisenhuth,

and John Doe Substitute Teacher (the "Substitute").[5]   The Board

members, Peduzzi, and Eisenhuth are being sued in their official

and individual capacities.   Plaintiffs seek compensatory,

punitive, and injunctive relief.   Plaintiffs present claims

under the following legal theories:

1.   Deprivation of Constitutional Rights under 42 U.S.C. §
     1983 and U.S. Const. Amend. XIV (Count I)

2.   Deprivation of Constitutional Rights under 42 U.S.C. §
     1985 and U.S. Const. Amend. XIV (Count II)

3.   Deprivation of Constitutional Rights under 42 U.S.C. §
     1986 and U.S. Const. Amend. XIV (Count III)

4.   Common Law Negligence (Count IV)

5.   Common Law Gross Negligence (Count V), and

6.   Breach of Contract (Count VI).

By the instant motion, the Board, the individual members of

the Board, Peduzzi, and Eisenhuth seek dismissal of all claims

in the First Amended Complaint [Document 7] pursuant to Federal

Rule of Civil Procedure 12(b)(6).

---

[5]   The Substitute is an unknown substitute teacher who
allegedly was present during at least one of the bullying
incidents mentioned in the Amended Complaint.   The Substitute –
not having been served – did not file the instant motion.
However, the Court finds the instant motion applicable to the
Substitute.

II.  <u>DISMISSAL STANDARD</u>

A motion to dismiss filed pursuant to Federal Rule of Civil
Procedure 12(b)(6) tests the legal sufficiency of a complaint.
A complaint need only contain "a short and plain statement of
the claim showing that the pleader is entitled to relief, in
order to give the defendant fair notice of what the . . . claim
is and the grounds upon which it rests."  <u>Bell Atl. Corp. v.</u>
<u>Twombly</u>, 550 U.S. 544, 555 (2007) (citations omitted).  When
evaluating a 12(b)(6) motion to dismiss, a plaintiff's well-
pleaded allegations are accepted as true and the complaint is
viewed in the light most favorable to the plaintiff.  However,
conclusory statements or a "formulaic recitation of the elements
of a cause of action" will not suffice.  <u>Id.</u>  A complaint must
allege sufficient facts to "cross 'the line between possibility
and plausibility of entitlement to relief.'"  <u>Francis v.</u>
<u>Giacomelli</u>, 588 F.3d 186, 193 (4th Cir. 2009) (quoting <u>Twombly</u>,
550 U.S. at 557).

Inquiry into whether a complaint states a plausible claim
is "a context-specific task that requires the reviewing court to
draw on its judicial experience and common sense."  <u>Id.</u>  Thus,
if the well-pleaded facts contained within a complaint "do not
permit the court to infer more than the mere possibility of
misconduct, the complaint has alleged – but it has not shown –
that the pleader is entitled to relief."  <u>Id.</u>  (quoting <u>Ashcroft</u>

v. Iqbal, -- U.S. --, 129 S. Ct. 1937, 1950 (2009))(internal
quotation marks omitted).

III. DISCUSSION

    A.   Official Capacity Federal Claims

    The Amended Complaint contains claims against the Board as
well as the Board members, Peduzzi, and Eisenhuth (the
"individual Defendants") in their official capacities pursuant
to 42 U.S.C. § 1983, § 1985, and § 1986.  Defendants contend
that the Board is a state agency so that neither the Board nor
the individual Defendants sued in their official capacities are
"persons" subject to suit under § 1983, § 1985, or § 1986.

    1.   The Board

    42 U.S.C. § 1983 states, in relevant part, that "[e]very
person who, under color of any statute . . . subjects . . . any
citizen of the United States or other person . . . to the
deprivation of any rights, privileges, or immunities secured by
the Constitution and laws, shall be liable to the other party."
"[A] State nor its officials acting in their official capacities
are 'persons' under § 1983."  Will v. Michigan Dept. of State
Police, 491 U.S. 58, 71 (1989).

    A Maryland county school board is considered a state agency
and is therefore not a "person" subject to suit under § 1983.

See <u>Hanifee v. Board of Educ. Of Kent Cnty.</u>, 2010 WL 723772, at

*5 (D. Md. 2010); <u>James v. Frederick Cnty. Pub. Schs.</u>, 441 F.

Supp. 2d 755, 760 (D. Md. 2006); <u>Dunn v. Baltimore Cnty. Bd. of</u>

<u>Educ.</u>, 83 F. Supp. 2d 611 (D. Md. 2000).

    Accordingly, Plaintiffs § 1983 claim (Count I) against the

Board is subject to dismissal.  Additionally, Plaintiffs § 1985

and § 1986 claims against the Board are subject to dismissal.

See <u>e.g.</u>, <u>The Jersey Heights Neighborhood Association v.</u>

<u>Glendenning</u>, 174 F.3d 180, 191 (4th Cir. 1999); <u>Minor v. United</u>

<u>States</u>, 294 F. App'x 295, 296 (9th Cir. 2008); <u>Higginbotham v.</u>

<u>Jones</u>, 2010 WL 1662475, at * 1 (W.D. La. 2010); <u>McCabe v.</u>

<u>Macaulay</u>, 551 F. Supp. 2d 771, 783 (N.D. Iowa 2007).

    The § 1983 (Count I), § 1985 (Count II), and § 1986 (Count

III) Claims asserted against the Howard County Board of

Education shall be dismissed.


            2.   <u>Individual Defendants</u>

    Plaintiffs cannot sue the Individual Defendants in their

official capacities.  In addition to state agencies, state

officials sued for monetary relief in their official capacities

are not "persons" under § 1983.  See <u>Hafer v. Melo</u>, 502 U.S. 21,

26 (1991) (explaining that official-capacity suit against a

state official is in essence a suit against the state itself).

Therefore, if the individual Defendants are found to be state

officials, any official capacity claims against pursuant to §
1983, § 1985, and § 1986 would be dismissed.

However, the individual Defendants can be sued in their
individual or personal capacities under § 1983 even if they were
found to be state officials.  Id. at 31.  Accordingly, the Court
will consider whether the Amended Complaint states plausible
claims under § 1983, § 1985, and § 1986 against the individual
Defendants in their personal capacities.


    B.   42 U.S.C. § 1983 (Count I)

The Amended Complaint contains allegations that the
individual Defendants deprived N.B. of his rights under the
Equal Protection and Due Process Clauses of the Fourteenth
Amendment under the color of state law in violation of 42 U.S.C.
§ 1983.[6]  Plaintiffs also assert a Monell claim against Peduzzi
and the Board members.


    1.   Equal Protection Clause Claim

The Equal Protection Clause of the Fourteenth Amendment
provides that "[n]o State shall . . . deny any person within its
jurisdiction the equal protection of the laws."  U.S. Const.
amend. XIV, § 1.  In order to state a claim under the Equal

---

[6]   Plaintiffs do not contend that the Board members
participated personally in the alleged Constitutional
violations.

Protection Clause, a plaintiff must allege facts sufficient to show that he was treated differently from others with whom he is similarly situated and that such unequal treatment was the result of intentional or purposeful discrimination.  See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

The Amended Complaint contains allegations that Peduzzi, Eisenhuth, and the Substitute knew N.B. was being bullied and failed to take action to protect him.  Concerning differential treatment, the Amended Complaint contains the following allegation:

> 34. The Defendants deprived N.B. of his due process and equal protection rights under the Fourteenth Amendment of the Constitution of the United States, by engaging in the following conduct, which is not limited to:
>
> ***
>
> e. Condoning, permitting or acquiescing in the violent and continued abusive conduct of the said students, which discriminated against N.B., because of his emotional disability of post-traumatic disorder . . . .

The Plaintiffs have failed to plead facts sufficient to state a plausible claim that the individual Defendants treated N.B. differently from similarly situated students and such treatment was the result of intentional or purposeful discrimination.  See Cook v. James, 100 F. App'x 178, 180-81 (4th Cir. 2004).  The Amended Complaint contains no facts capable of supporting an inference that the individual

Defendants treated other students presenting similar bullying related problems differently than N.B.  Moreover, the Amended Complaint fails to allege sufficient facts to support the conclusory allegation that N.B. was discriminated against due to an emotional disability.[7]

Accordingly, the Equal Protection Clause claim asserted against the individual Defendants shall be dismissed.


### 2.   Substantive Due Process Clause Claim

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  Plaintiffs allege the individual Defendants deprived N.B. of his substantive[8] Due Process rights by failing to protect him from known risks of assault from other students while at school.  Defendants contend that the alleged failure to

---

[7]    The only reference to N.B.'s emotional disability in the Amended Complaint is N.B.'s diagnosis of symptoms of post-traumatic stress disorder in March of 2008.  However, the factual allegations in the Amended Complaint concerning the school's response to the bullying took place in December 2007, January 2008, and February 2008.

[8]    The allegations contained in the Amended Complaint invoke the substantive portion of the Due Process Clause because the Plaintiffs allege the individual Defendants were obligated to protect N.B. under the circumstances and not "that the State denied [N.B.] protection without according him appropriate procedural safeguards."  DeShaney v. Winnebago Cnty. Dep't of Social Servs., 489 U.S. 189, 195 (1989).

protect N.B. against private violence does not constitute a Due Process violation.

In the instant matter, the perpetrators of the attacks against N.B. were fellow students, not school officials.  There are no factual allegations that any of the bullies acted at the behest of a school official named in the Amended Complaint. Plaintiffs seek to hold the individual Defendants constitutionally liable for failing to take appropriate action to prevent students from committing violent acts against N.B. while at school.  Plaintiffs' allegations fall within the Supreme Court's decision in DeShaney v. Winnebago Cnty. Dep't of Social Servs., 489 U.S. 189 (1989) and its progeny.

"As a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." DeShaney, 489 U.S. at 197 (finding State had no duty under Due Process Clause to protect child from his father after receiving reports of possible abuse).  The Due Process Clause does not confer an affirmative right to government protection "even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." Id. at 196.  However, courts have generally recognized two circumstances where an affirmative duty of protection may be imposed upon a state, which are discussed in turn.

a.   <u>Special Relationship Doctrine</u>

The existence of a "special-relationship" between a state and an individual can confer an affirmative duty on the state to protect the individual from harm inflicted by third parties.  A special relationship is defined as:

> [W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs- <u>e.g.</u>, food, clothing, shelter, medical care, and reasonable safety-it transgresses the substantive limits on state action set by ... the Due Process Clause.... [I]t is the State's affirmative act of restraining the individual's freedom to act on his own behalf-through incarceration, institutionalization, or other similar restraint of personal liberty-which is the "deprivation of liberty" triggering the protections of the Due Process Clause . . . .

<u>DeShaney</u>, 489 U.S. at 200.  Thus, <u>DeShaney</u> "requir[es] a custodial context as the condition for an affirmative duty."

<u>Pinder v. Johnson</u>, 54 F.3d 1169, 1175 (4th Cir. 1995) (en banc).

Concerning the school-student relationship, the Fourth Circuit, in an unpublished decision, found that "no special relationship exists [between the student and the school] because the student is not in physical custody and, along with parental help, is able to care for his basic human needs."  <u>Stevenson v. Martin County Board of Education</u>, No. 99-2685, 3 F. App'x 25, 30-31 (4th Cir. Feb. 6, 2001) (finding complaint failed to state

a § 1983 claim where student alleged school officials failed to protect him from student-on-student attacks); Shores v. Stafford Cnty. School Bd., 2005 WL 2071730, at * 3-4 (E.D. Va. Aug. 26, 2005) (relying on Stevenson).

Many federal courts that have addressed the issue have found that the school-student relationship is not sufficiently custodial to be categorized as a "special relationship" under DeShaney.  See D.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364, 1372 (3d Cir. 1992) ("[T]he school defendants' authority over D.R. during the school day cannot be said to create the type of physical custody necessary to bring it within the special relationship noted in DeShaney."); J.O. v. Alton Community Unit School Dist. 11, 909 F.2d 267, 272 (7th Cir. 1990) (explaining compulsory school attendance laws do not make school children like mental patients and prisoners and thus state has no affirmative duty to protect them).[9]  Other courts have required intentional or reckless affirmative conduct that shocks the conscience on part of the school officials prior to imposing constitutional liability for student-on-student violence.  Sutton v. Utah State Sch. For the Deaf & Blind, 173

---

[9]    The position that public schools, without exception, owe no constitutional duty to protect their students has received criticism.  See Willhauck v. Town of Mansfield, 164 F. Supp. 2d 127, 133 (D. Mass. 2001) (detailing judicial and academic opinions critical to a strict rule that the special relationship doctrine is inapplicable to the student-school relationship).

F.3d 1226, 1238 (10th Cir. 1999); <u>Leffall v. Dallas Indep. Sch.</u>
<u>Dist.</u>, 28 F.3d 521, 531 (5th Cir. 1994).

Plaintiffs assert that a "special relationship" has been
pleaded adequately because of the express or implied guarantees
of safety made by Defendants in the Handbook.  There does not
appear to be case law addressing whether a student handbook can
create a "special relationship" for purposes of the Due Process
Clause.  However, in <u>Pinder v. Johnson</u>, the Fourth Circuit
stated that "custody [is] the crux of the special relationship
rule." 54 F.3d 1169, 1175 (4th Cir. 1995) (en banc).  Assuming
the Handbook is relevant, Plaintiffs have alleged no facts
demonstrating that the school-student relationship is
sufficiently custodial to be categorized as a "special
relationship" under Due Process jurisprudence.


b.   <u>State Created Danger Doctrine</u>

The "state created danger doctrine"[10] renders a state liable
for the acts of third parties when the state itself creates the

---

[10]   The "state created danger" doctrine has its origins in the
following language from the Supreme Court's decision in
<u>DeShaney</u>:

> [w]hile the State may have been aware of the dangers
> that Joshua faced in the free world, it played no part
> in their creation, nor did it do anything to render
> him any more vulnerable to them. That the State once
> took temporary custody of Joshua does not alter the
> analysis, for when it returned him to his father's

danger by its affirmative action.  See Pinder v. Johnson, 54 F.3d 1169, 1175 (4th Cir. 1995).  The Fourth Circuit recognizes the existence this doctrine, but has not confronted a factual situation warranting its application.  See J.X. ex rel. Simpson v. Thorsen, 2011 WL 690173, at *13 (E.D. Va. Feb. 25, 2011).  Under this doctrine, the state does not commit an affirmative act or create a danger "every time it does anything that makes injury at the hands of a third party more likely."  Pinder, 54 F.3d at 1175.  Nor does it render a state liable where a third party commits an affirmative act and the state simply fails to provide adequate protection from it.  See id.

Plaintiffs assert the Amended Complaint contains sufficient facts to invoke the state-created danger doctrine.  Relying on Kneipp v. Tedder, 95 F.3d 1199 (3d Cir. 1999), Plaintiffs contend the individual Defendants affirmatively induced Plaintiffs' reliance on its "zero-tolerance" bullying policy in the Handbook and then failed to enforce such polices thereby creating further opportunities for student-on-student violence.[11]

---

custody, it placed him in no worse position than that in which he would have been had it not acted at all...

DeShaney, 489 U.S. at 201.

[11]   In Kneipp, the Third Circuit adopted a four-part test to determine whether the state-created danger doctrine is applicable to a particular circumstance:

In Pinder v. Johnson, 54 F.3d 1169, the Fourth Circuit
declined to apply the state created danger doctrine.[12]  In that
case, Carol Pinder called the police after her ex-boyfriend had
broken into her home, assaulted her, and threatened to kill her
and her children.  The responding police officer arrested the
ex-boyfriend and assured Pinder that the ex-boyfriend would be
in custody overnight so Pinder could leave her children at home
when she went to work the night shift.  The authorities then
charged the ex-boyfriend with misdemeanor offenses and he was
released, almost immediately.  While Pinder was at work, the ex-

_____

(1) the harm ultimately caused was foreseeable and
fairly direct; (2) the state actor acted in willful
disregard for the safety of the plaintiff; (3) there
existed some relationship between the state and the
plaintiff; (4) the state actors used their authority
to create an opportunity that otherwise would not have
existed for the third party's crime to occur.

Kneipp v. Tedder, 95 F.3d 1199, 1208 (3d Cir. 1999).

In Kneipp, the court addressed a situation where police
officers left an intoxicated pedestrian alone to walk home on a
cold night.  The court found summary judgment improper where a
triable issue existed as to whether the police officers
affirmatively placed the plaintiff in a position of danger.  Id.
at 1211.  The Fourth Circuit has not adopted the Kneipp test.
See Carroll K. v. Fayette County Bd. of Educ., 19 F. Supp. 2d
618, 624 (S.D. W. Va. 1998).

[12]   In her concurrence, Judge Motz notes that this portion of
the Pinder opinion is dicta, and that the narrow holding of the
case is that the police officer was entitled to summary judgment
on his qualified immunity defense.  Pinder v. Johnson, 54 F.3d
1169, 1179 (Motz, J., concurring).  This Court finds the Pinder
majority's discussion and rejection of the state created danger
doctrine in that case persuasive.

boyfriend set fire to her home, killing all three children who
were asleep in the house.  Under these facts, the Fourth Circuit
concluded that it

> cannot accept Pinder's attempt to escape the import of
> DeShaney by characterizing her claim as one of
> affirmative misconduct by the state in "creating or
> enhancing" the danger, instead of an omission. . . .
> No amount of semantics can disguise the fact that the
> real "affirmative act" here was committed by Pittman,
> not by Officer Johnson.

Pinder, 54 F.3d at 1175 (emphasis in original).

Here, as in Pinder, Plaintiffs attempt to characterize
their claim as one of affirmative misconduct by contending the
individual Defendants affirmatively induced Plaintiffs' reliance
on its "zero-tolerance" bullying policy in the Handbook and then
failed to enforce such polices thereby creating further
opportunities for student-on-student violence.  Taking those
facts as true, here, as in Pinder, no wordsmithing can disguise
the fact that the affirmative actions in issue were committed by
the classmates who bullied N.B., not by the individual
defendants.  The Defendants' issuance of the Handbook and
subsequent failure to enforce the zero-tolerance policy therein
is no more an affirmative act of misconduct than was Officer
Johnson's assurance to Ms. Pinder that her family would be safe
overnight from Pittman, and Pittman's subsequent immediate
release.  Thus, because the state-created danger doctrine only
imposes constitutional liability on state officials whose

affirmative conduct creates a danger, and not where state officials merely failed to protect, this Court declines to apply it here.[13]

As noted by the Supreme Court in DeShaney, a determination that the State has not committed a Due Process Clause violation does not necessarily preclude a viable claim under state tort law. See DeShaney, 489 U.S. at 201-02.

### 3.   Monell Claim

The Amended Complaint contains allegations that Peduzzi and the Board members "failed to adequately train and supervise teacher staff in their charge." (Am. Compl. ¶ 35.)  It appears that Plaintiffs are asserting a claim under Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 691-95 (1978).

In § 1983 actions there is no vicarious liability on the part of an individual for the actions of his subordinates under a theory of respondeat superior.  Id.  In certain situations, supervisory officials may be held liable under § 1983 for the constitutional injuries inflicted by their subordinates.  See Slakan v. Porter, 737 F.2d 368, 372-73 (4th Cir. 1984); Shaw v.

---

[13]   The instant case can be contrasted with Meeker v. Edmundson, 415 F.3d 317 (4th Cir. 2005), in which the Fourth Circuit held that Plaintiff did state a substantive due process claim where the defendant wrestling coach allegedly affirmatively encouraged and facilitated students to beat the plaintiff student.

Stroud, 13 F.3d 791, 798 (4th Cir. 1994).  To establish

supervisory liability under § 1983, the following elements must

be shown:

> (1) that the supervisor had actual or constructive
> knowledge that his subordinate was engaged in conduct
> that posed a pervasive and unreasonable risk of
> constitutional injury to citizens like the plaintiff;
>
> (2) that the supervisor's response to that knowledge
> was so inadequate as to show deliberate indifference
> to or tacit authorization of the alleged offensive
> practices; and
>
> (3) that there was an affirmative causal link between
> the supervisor's inaction and the particular
> constitutional injury suffered by the plaintiff.

Shaw, at 13 F.3d at 799 (internal citations omitted).

Thus, Plaintiffs cannot maintain a viable Monell claim in

absence of a plausible underlying constitutional violation.

Therefore, where the allegations in the Amended Complaint fail

to make out a constitutional claim against the individual

Defendants, it follows that the Board members and Peduzzi cannot

be constitutionally liable on a Monell theory.  See Belcher v.

Oliver, 898 F.2d 32, 36 (4th Cir. 1990).


C.    42 U.S.C. § 1985 & 1986 (Counts II, III)

The Amended Complaint contains allegations that the

individual Defendants, "individually and in concert with one

another by agreement or implied agreement, deprived the

Plaintiff, N.B., of his due process and equal protection

rights." (Am. Compl. ¶ 41.) The Defendants contend Plaintiffs have failed to allege facts sufficient to state a plausible claim under 42 U.S.C. § 1985 and § 1986.

"The law is well settled that to establish a sufficient cause of action for 'conspiracy to deny equal protection of the laws' under section 1985(3), a plaintiff must prove":

(1) a conspiracy of two or more persons,

(2) who are motivated by a specific class-based invidiously discriminatory animus to,

(3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all,

(4) and which results in injury to the plaintiff as,

(5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995). Additionally, a plaintiff must "show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." Id. at 1378.

The Fourth Circuit has taken a restrictive view of § 1985 claims, specifically rejecting such claims "'whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts.'" A Soc'y Without A Name, For People Without A Home, Millenium Future-Present v. Virginia, No. 10-1437, slip op. at 6 (4th Cir. Aug. 24, 2011) (quoting Simmons, 47 F.3d at 1376) (holding claim failed to

allege specific facts necessary to uphold a § 1985(3) conspiracy
claim where it was "comprised almost entirely of conclusory
allegations unsupported by concrete facts").

The factual allegations contained in the Amended Complaint
fail to allege a plausible claim that Peduzzi, Eisenhuth, the
Substitute, and the Board members conspired or agreed to violate
N.B.'s constitutional rights.  The Amended Complaint is devoid
of any factual allegations concerning the involvement of the
Board members or that any of the relevant incidents were
communicated to the Board members.  Moreover, factual
allegations that Peduzzi and Eisenhuth met with Mr. and Mrs.
Bulgarino and that Peduzzi stated N.B.'s situation had been
mishandled are insufficient to support a plausible conspiracy
claim.  There are no facts to support a reasonable inference
that there was an agreement or meeting of the minds on part of
the individual Defendants to violate N.B.'s constitutional
rights.  Accordingly, the Court finds the Amended Complaint
fails to state a claim against the individual Defendants under §
1985(3).

A valid § 1985(3) claim is a prerequisite to asserting a §
1986 claim.  Accordingly, where the Amended Complaint fails to
state a claim under § 1985(3), the Amended Complaint also fails
to state a claim under § 1986 as a matter of law.  See Highfield

Water Co. v. Public Service Commission, 488 F. Supp. 1176, 1192 (D. Md. 1980).

The Court, therefore, finds that the § 1985(3) Claim (Count II) and the § 1986 Claim (Count III) shall be dismissed.[14]


D.   State Law Claims (Counts IV, V, and VI)

Having determined to dismiss the federal claims raised in the Complaint, the Court declines to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). See also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (When "federal claims are dismissed before trial . . . the state claims should be dismissed as well"). Therefore, this Court dismisses Count IV (Common Law Negligence), Count V (Common Law Gross Negligence), and Count VI (Breach of Contract) without prejudice.


VI.   CONCLUSION

For the reasons set forth herein,

> 1.   Defendant's Motion to Dismiss Amended Complaint [Document 11] is GRANTED with respect to Counts I, II, and III of the Amended Complaint.
>
> 2.   The remaining claims, Counts IV, V, and VI, are DISMISSED WITHOUT PREJUDICE.

---

[14]   Where the Court has determined that the Amended Complaint fails to allege facts sufficient to state a plausible claim under § 1983, § 1985, and § 1986, it is unnecessary to address the parties' immunity contentions.

3.    Judgment shall be entered by separate Order.


SO ORDERED, this <u>Monday, September 12, 2011</u>.


                          _____/s/_____
                              Marvin J. Garbis
                          United States District Judge